**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CX REINSURANCE COMPANY LIMITED, f/k/a CNA REINSURANCE COMPANY LIMITED, | * * * * |
| Plaintiff, | * * |
| v. | * Civil Case No. JKB-17-1476 |
| CITY HOMES, INC., et al., | * * |
| Defendants. | * * |

**MEMORANDUM OPINION AND ORDER**

Pursuant to Judge Bredar's May 22, 2018 Order, this matter has been referred to me for discovery disputes and related scheduling matters. [ECF No. 55]. Presently pending is Plaintiff CX Reinsurance Company Limited's ("CX Re") Motion for Protective Order [ECF No. 61], Defendant City Homes, Inc., et al's Opposition [ECF No. 69], and CX Re's Reply [ECF No. 75]. Also pending are CX Re's Motion to Seal Plaintiff's Motion for Protective Order [ECF No. 62], City Homes's Motion to Seal Opposition to Plaintiff's Motion for Protective Order [ECF No. 71], and CX Re's Motion to Seal Reply in Support of Plaintiff's Motion for Protective Order [ECF No. 76]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, CX Re's Motion for Protective Order is DENIED and CX Re's Motion to Seal Plaintiff's Motion for Protective Order, City Homes's Motion to Seal Opposition, and CX Re's Motion to Seal Reply are all DENIED, though the parties are granted leave to file redacted versions of the documents in question, along with a new motion to seal the redacted portions.

**I.    BACKGROUND**

In this action, CX Re seeks to rescind commercial general liability insurance policies ("Policies") issued to City Homes, Inc. ("City Homes"), its principal Barry Mankowitz ("Mankowitz"), and other named insureds in 1997, 1998, 1999, and 2000. Compl. ¶¶ 1, 11-19, 63. The Policies provide insurance coverage for certain risks, including lead exposure, relating to specified residential rental properties in Baltimore, Maryland. *See* Policies, [ECF Nos. 1-1, 1-2, 1-3, 1-4].

In particular, CX Re alleges that City Homes made misrepresentations of material fact in the Application upon which the Policies were issued. Compl. ¶ 1. CX Re avers that City Homes falsely answered "No" to Questions 12 and 14 of the Application, which ask, respectively, whether there is "lead paint on any interior or exterior surface of the building," and whether there is "any paint chipping or flaking, or otherwise peeling off any interior or exterior surface of the building[.]" *Id.* ¶¶ 20-27, 57-58. CX Re argues that, if Defendants had answered the question truthfully, CX Re either would not have issued the Policies, or would have issued the Policies subject to substantially different terms. *Id.* ¶¶ 59-60. CX Re asserts that it first learned of the alleged misrepresentations regarding Questions 12 and 14 of the Application in May, 2017, and filed this action shortly thereafter on May 30, 2017. *Id.* ¶¶ 61, 62.

On September 10, 2013, well before CX Re filed this action, City Homes filed for bankruptcy relief. *In re City Homes III, LLC*, No. 13-25370-RAG (Bankr. D. Md. 2013). CX Re was an active participant in the Chapter 11 proceedings, as one of City Homes's lead paint insurers. On April 13, 2017, the Bankruptcy Court entered an order confirming the Third Amended Chapter 11 Plan, and on April 17, 2017, the Bankruptcy Court appointed Zvi Guttman ("Mr. Guttman") as the Plan Trustee. *In re City Homes*, ECF Nos. 849, 853. When CX Re filed

this lawsuit against City Homes, Mr. Guttman sought clarification from the Bankruptcy Court regarding his obligation to defend against CX Re's action. *In re City Homes*, ECF No. 899. On September 28, 2017, over CX Re's objections, Bankruptcy Judge Gordon issued an order approving City Homes's Term Sheet and authorizing City Homes to engage the law firm of Gallagher Evelius & Jones LLP ("the Gallagher firm") as defense counsel in this action. *In re City Homes*, ECF No. 921. The law firm of Semmes Bowen & Semmes ("the Semmes firm") has represented all of the Defendants in this action since July 3, 2017. [ECF Nos. 7, 8]. On September 25, 2017, the Gallagher firm entered its appearance as co-counsel on behalf of Defendant City Homes, but not Mankowitz. [ECF Nos. 28, 29, 30, 31].

On February 2, 2018, Judge Bredar issued a Stipulated Protective Order in this case, allowing the parties to designate as confidential any documents they believe, in good faith, contain "information or items that are entitled to confidential treatment under applicable legal principles." [ECF No. 51 ¶ 1]. Pursuant to the Stipulated Protective Order, documents designated as confidential may be disclosed only to the limited group of authorized persons identified in paragraph 5.2 of the Order. [ECF No. 51 ¶ 5.2]. The Stipulated Protective Order specifically excludes from the group of authorized persons "outside counsel in any other litigation (unless those same attorneys are also counsel of record in this litigation), including, without limitation, counsel in any case alleging lead paint liability to which this litigation may relate." *Id.* ¶ 5.2(a).

CX Re now seeks a protective order to prevent the Gallagher firm from accessing, and disseminating to anyone outside of the Gallagher firm, litigation files from the Semmes firm and documents produced by CX Re in this case. [ECF No. 61]. CX Re also seeks to prevent the use of Defendants' interrogatory answers from this case in any other lead paint liability lawsuit, and

3

to prevent the Gallagher firm from providing advice to any lead paint plaintiffs' attorneys who have sued, or may later sue, any person insured by CX Re. *Id.*

## II. LEGAL STANDARD

Parties may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Under Federal Rule of Civil Procedure 26(b), relevance, rather than admissibility, governs whether information is discoverable. *See id.*; *Herchenroeder v. Johns Hopkins Univ. Applied Physics Lab*, 171 F.R.D. 179, 181 (D. Md. 1997). Information sought need only "appear[] [to be] reasonably calculated to lead to the discovery of admissible evidence" to pass muster. *See Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 377 (D. Md. 2014). However, even in the case of relevant information, "the simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had." *Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). Instead, Rule 26(b) inserts a proportionality requirement into the amount and content of the discovery sought, and requires courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Significantly, Rule 26(c)(1) permits courts to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Where a protective order is sought, the moving party bears the burden of establishing good cause. *Webb v. Green Tree Servicing, LLC*, 283 F.R.D. 276, 278 (D. Md. 2012). To determine whether the movant has met his burden, the court must balance the "interest of a party in obtaining the information versus the interest of his opponent in keeping the information

4

confidential or in not requiring its production." *UAI Tech, Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 181 (M.D.N.C. 1988). In other words, "the Court must weigh the need for the information versus the harm in producing it." *A Helping Hand, LLC v. Baltimore Cnty., Md.*, 295 F. Supp. 2d 585, 592 (D. Md. 2003) (internal quotation marks omitted). Despite the broad discretion conferred on trial courts to "decide when a protective order is appropriate and what degree of protection is required," *see Seattle Times Co. v. Rinehart*, 467 U.S. 20, 36 (1984), the standard for issuance of a protective order is high. *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 125 (D. Md. 2009); *id.* at 121 ("Although the Fourth Circuit . . . has not explicitly held that a First Amendment right of access exists with regard to non-dispositive civil motions and hearings, the precedent strongly favors that view, with the higher burden for sealing.").

## III. ANALYSIS

### A. CX Re's Motion for Protective Order

CX Re argues that a protective order is required in this case based on "the Gallagher Firm's conflict of interest and the prejudicial impact that the disclosure of sensitive information to the Lead Paint Plaintiffs' Firms may have on the underlying lead paint litigation." [ECF No. 61 at 15]. Accordingly, CX Re seeks an order prohibiting the Gallagher firm from:

> (i) accessing underlying defense counsel's litigation files or any related information CX Re might produce to Defendants in this lawsuit; (ii) disseminating to anyone outside of the Gallagher Firm any information that the Gallagher Firm learns in this lawsuit about the defense of the underlying lead paint actions; and (iii) providing advice to any lead paint plaintiffs' attorneys that have sued, or may later sue, any person insured by CX Re.

*Id.* CX Re also seeks a protective order "prohibiting the use of Defendants' interrogatory answers from this lawsuit in any lead paint liability lawsuit." *Id.* I find that CX Re has not established good cause necessary to issue the protective order it seeks, and I will address each of CX Re's concerns below.

### 1. The Gallagher Firm's Representation of Lead Paint Plaintiffs and Lead Paint Plaintiffs' Firms

CX Re's principal concern is that a conflict exists in the Gallagher firm's representation of City Homes, because the firm is also representing lead paint plaintiffs' firms and their clients in other actions regarding lead paint liability. [ECF No. 61 at 6-9]. While CX Re is willing to produce documents to the Semmes firm, it has "grave concerns" about producing the documents to the Gallagher firm, or allowing the Semmes firm to share documents with the Gallagher firm, because such access would have a "prejudicial impact on the defense of the underlying lead paint lawsuits." *Id.* at 7.

CX Re's requested relief effectively seeks disqualification of the Gallagher firm as co-counsel for City Homes. The Gallagher firm cannot represent City Homes if it is unable to receive or review discovery. In the Fourth Circuit, a "motion to disqualify is a serious matter, which must be decided on a case by case basis." *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 750 (D. Md. 1997) (internal citations and quotation marks omitted). Courts must find a "balance between the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community." *Franklin v. Clark*, 454 F. Supp. 2d 356, 364 (D. Md. 2006) (internal quotation marks omitted). "Because disqualification necessarily results in a drastic result of a party losing its freely-chosen counsel, the movant 'bear[s] a high standard of proof to show that disqualification is warranted.'" *Fenzel v. Group2 Software, LLC*, DKC-13-0379, 2014 WL 7404575, at *2 (D. Md. Dec. 29, 2014) (quoting *Franklin*, 454 F. Supp. 2d at 364). Thus, "the movant has the burden of proof as to all facts necessary to show the rule of professional conduct that requires the attorney's disqualification." *Id.*

CX Re alleges that the Gallagher firm violated Rule 19-301.7 of the Maryland Rules of Professional Conduct ("MRPC"). This district applies the MRPC as they have been adopted by

the Maryland Court of Appeals. Loc. R. 704 (D. Md. 2016). MRPC 19-301.7 prohibits an attorney from representing a client if the representation involves a conflict of interest. Md. R. Prof'l Conduct 19-301.7. A conflict of interest exists when: "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the attorney's responsibilities to another client, a former client or a third person . . . ." *Id.*

CX Re insists that it does not seek disqualification of the Gallagher firm, [ECF No. 75 at 1-2], and because I find that CX Re has not met the burden of establishing good cause for a Protective Order, I need not address whether CX Re can meet the higher burden to disqualify counsel. CX Re has failed to show, pursuant to Rule 26(c)(1), how, without the requested protective order, it would be subject to "annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. P. 26(c)(1). CX Re argues that the Gallagher firm's representation of lead paint plaintiffs and lead paint plaintiffs' firms in other state and federal actions is incompatible with its representation of the landlord in this case, City Homes. *See, e.g.*, *CX Reinsurance Co. Ltd v. Johnson*, Case No. 15-cv-3132-RWT (D. Md.); *Jeffers, et al. v. Levitas, et al.*, Case No. 24-C-12-005059 LP (Circuit Court for Baltimore City).

CX Re cites no case law or other authority to support its position that this circumstance warrants a protective order preventing City Homes from consulting the attorneys of its choice. CX Re cannot point to any specific "annoyance, embarrassment, oppression, or undue burden or expense" that it will face if the Gallagher firm has access to the discovery documents in this case. Nor can CX Re point to any evidence showing a significant risk that the Gallagher firm will be materially limited by its representation, in other cases, of lead paint plaintiffs and their firms. The Gallagher firm does not represent any adverse lead paint claimants or their firms against its

7

current client, City Homes. The fact that CX Re is adverse to the Gallagher firm's clients in different contexts does not place the Gallagher firm's clients in conflict with one another.

Importantly, Bankruptcy Judge Gordon approved the Gallagher firm's representation of City Homes, even over CX Re's objections that the Gallagher firm was "conflicted." *In re City Homes*, ECF Nos. 918, 921. Judge Bredar has previously found that landlord defendants and lead paint claimants, represented by the Gallagher firm, have mutual objectives defending against CX Re's rescission claims. In granting permissive intervention in other cases to lead paint claimants represented by the Gallagher firm, Judge Bredar reasoned that the lead paint claimants and the policyholder landlord defendants "share the same ultimate objective—payment of insurance proceeds." *CX Reinsurance Co. Ltd. v. Leader Realty Co., et al.*, Case No. 15-cv-3054-JKB, ECF No. 74 at 3 (D. Md. Jan. 10, 2017). I see no reason not to follow the same logic in this case. Thus, I find that CX Re's concerns regarding the Gallagher firm's conflict of interest are unavailing.

### 2. The Gallagher Firm's Prior Disclosures

CX Re also cites the Gallagher firm's prior disclosures of confidential information, in other cases, as a basis for a protective order in this case. [ECF No. 61 at 10-11]. In the *Johnson* case, the Gallagher firm inadvertently revealed information subject to a protective order in a public filing. *Johnson*, ECF No. 174 at 11 n.3 (D. Md. June 12, 2018). The Gallagher firm corrected this error within a week, pursuant to Judge Titus's order. *Johnson*, ECF No. 181 (D. Md. June 18, 2018). In another case, the Gallagher firm inadvertently emailed confidential settlement information to lawyers for lead paint claimants. *CX Reinsurance Co. Ltd. v. B&R Management, Inc.*, Case No. 15-cv-3364-ELH, ECF No. 167 (D. Md. Apr. 12, 2017). The

Gallagher firm discovered its error, recalled the email, and immediately informed the Court and CX Re of the inadvertent disclosure. *Id.*

CX Re has not alleged any violation of the Stipulated Protective Order in place in this case, nor was the Gallagher firm disqualified, sanctioned, or otherwise restricted from accessing confidential documents as a result of its inadvertent disclosures in *Johnson* and *B&R*. Furthermore, I do not find that these two discrete instances, both of which were addressed and remedied promptly by the Gallagher firm, rise to the level of good cause to prevent the firm from further meaningful representation of its clients in other cases.

The Stipulated Protective Order already in place is sufficient to prevent any disclosure of information CX Re deems confidential. *See* [ECF No. 51]. Under the terms of that Order, documents designated as confidential may be disclosed only to the limited group of authorized persons identified in paragraph 5.2 of the Order, which "does not include…outside counsel in any other litigation (unless those same attorneys are also counsel of record in this litigation), including, without limitation, counsel in any case alleging lead paint liability to which this litigation may relate." *Id.* ¶ 5.2(a). To the extent that CX Re is concerned about the Gallagher firm sharing defendants' interrogatory answers from this lawsuit in "any lead paint liability lawsuit," the Order protects:

> all documents and tangible items generated, produced, disclosed, referenced, or otherwise used in this litigation, including, without limitation, . . . all Answers to Interrogatories, all Answers to Requests for Admissions, all Responses to Requests for Production of Documents, all transcripts of depositions, hearings, or other proceedings, all demonstratives and exhibits used in connection with such proceedings, and all pleadings, motions, briefs, memoranda, and other such documents filed with the Court.

*Id.* ¶ 2.2. Accordingly, I see no basis to issue another protective order in this case that restricts future dissemination of material produced during discovery. Any potential future disclosure of

9

privileged information by the Gallagher firm is speculative, and does not warrant a protective order that has the effect of impeding the Gallagher firm's ability to represent its client in this case.

### 3. The Gallagher Firm's Financial Incentives

CX Re is also concerned about the Gallagher firm's "financial incentive to help the Lead Paint Plaintiffs' Firms obtain judgments." [ECF No. 61 at 11]. CX Re notes, "[t]he more lead paint lawsuits the Lead Paint Plaintiffs' Firms win, the more opportunities the Gallagher firm may have to litigate their collection or coverage actions." *Id.* I find this concern meritless. CX Re does not cite any case law or other authority in support, and I do not find any issue with the Gallagher firm advocating and attempting to succeed on behalf of its clients. Certainly, there is no evidence that any financial incentive would cause the Gallagher firm to violate the existing Stipulated Protective Order in this case.

### 4. Lead Paint Plaintiffs and Plaintiffs' Firms' Interests

CX Re's final concern is that the Gallagher firm favors the interests of the lead paint plaintiffs' firms over its individual clients. [ECF No. 61 at 12-15]. Specifically, CX Re argues that the Gallagher firm caused City Homes, its client, to admit to lead levels in a sworn interrogatory because the Gallagher firm has an "interest in seeing the underlying lead paint plaintiffs obtain judgments against City Homes." *Id.* at 14. CX Re alleges attorney misconduct that is unsupported by the record. I agree with City Homes's view that the interrogatory answer is couched in broad terms and does not constitute a prejudicial factual admission. Accordingly, I find that CX Re's concern regarding this matter does not rise to the level of good cause required to issue CX Re's requested protective order and to prevent the Gallagher firm from accessing the discovery produced in this case, pursuant to the existing Stipulated Protective Order.

### 5. Other Requested Relief

CX Re also seeks to prevent the Gallagher firm from "providing advice to any lead paint plaintiffs' attorneys that have sued, or may later sue, any person insured by CX Re." [ECF No. 61 at 15.]. CX Re provides no support for this prospective request. I find no basis to restrict the Gallagher firm from providing advice, in other cases, to current and future clients insured by CX Re. Any issues arising in other existing or future cases should be litigated once they arise, not before.

### B. CX Re's Motions to Seal

CX Re also moves to seal the documents filed in support of its Motion for Protective Order. [ECF Nos. 62, 76]. City Homes opposed CX Re's Motion to Seal [ECF No. 69], but, in the event that this Court granted CX Re's Motion to Seal, City Homes filed a Motion to Seal its Opposition to Plaintiff's Motion for Protective Order. [ECF No. 71]. For the reasons discussed below, this Court DENIES all of the Motions to Seal [ECF Nos. 62, 71, 76].

Local Rule 105.11 provides that a party moving to seal documents "shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Loc. R. 105.11 (D. Md. 2016). The Court must balance the privacy interest of the party moving to seal against the presumptive First Amendment right of public access to court records in civil cases. *See Ashcroft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (noting the presumption favoring public access to court records). "This presumption of access, however, can be rebutted if countervailing interests heavily outweigh the public interests in access." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). The party seeking to rebut this presumption

"bears the burden of showing some significant interest that outweighs [it]." *Id.* (citing *Bank of America Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 800 F.2d 339, 344 (3d Cir. 1986)).

I do not find it necessary to seal all of the filings pertaining to CX Re's Motion for Protective Order, [ECF Nos. 61, 70, 75], in their entireties. I see very little information in any of the filings of a protected nature, and a significant portion of the contents consists of rehashing and summarizing public filings in other cases. Accordingly, the filings can be redacted to accommodate both CX Re's interest in maintaining the confidentiality of certain information contained in the filings, and the right of the public to access court records. The currently sealed documents will remain under seal until **November 1, 2018**. On or before that date, the parties are directed to file appropriately redacted versions of ECF No. 61, ECF No. 70, and ECF No. 75, along with a new motion to seal the redacted portions. Counsel should confer, to the extent possible, so as to file the redacted versions by consent of all counsel.

**C. City Homes's Request for Attorneys' Fees**

City Homes requests an award of attorneys' fees and expenses incurred in defending this Motion for Protective Order. [ECF No. 70 at 21-22]. Federal Rule of Civil Procedure 26(c)(3) provides that "Rule 37(a)(5) applies to the award of expenses" associated with a motion for a protective order. Fed. R. Civ. P. 26(c)(3). Rule 37(a)(5)(B) provides, if a motion for a protective order is denied, the court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). Importantly, "the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." *Id.* Here, because this case

presents a unique set of factual circumstances and issues of first impression, I find that CX Re's motion, while unsuccessful, was substantially justified. Accordingly, an award of attorneys' fees and expenses is inappropriate.

## IV. CONCLUSION

For the reasons set forth above, I find that Plaintiff has not shown good cause for a protective order above and beyond the Stipulated Protective Order already in place in this case. Accordingly, Plaintiff's Motion for Protective Order [ECF No. 61], is DENIED, and Plaintiff's Motion to Seal Plaintiff's Motion for Protective Order [ECF No. 62], Defendant's Motion to Seal Opposition to Plaintiff's Motion for Protective Order [ECF No. 71], and Plaintiff's Motion to Seal Reply in Support of Plaintiff's Motion for Protective Order [ECF No. 76], are all DENIED, though the parties are granted leave to file proposed redacted versions of the currently sealed documents on or before **November 1, 2018**. The documents currently under seal will remain under seal until that date.

<u>Dated</u>: October 18, 2018 _____/s/_____
Stephanie A. Gallagher
United States Magistrate Judge